UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| SHIRLETTA M. BAYLOR, | Case No. 2:19-cv-00231-EJY |
| Plaintiff, | **ORDER** |
| v. | Re: Plaintiff's Motion for Reversal and/or Remand |
| ANDREW SAUL, Acting Commissioner of Social Security,[1] | (ECF No. 16) |
| Defendant. | |

Plaintiff Shirletta M. Baylor ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or the "Agency") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, respectively. For the reasons below, the Commissioner's finding is affirmed.

## I.   BACKGROUND

On March 25, 2015 and October 17, 2016, Plaintiff filed applications for DIB and SSI, respectively, alleging a November 15, 2014 onset date of disability. Administrative Record ("AR") 243–50. The Commissioner denied Plaintiff's claims by initial determination on November 6, 2015, and denied reconsideration on April 1, 2016. AR 195–199, 170–74. On May 31, 2016, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 181–82. After conducting an in-person hearing on September 27, 2017 (AR 112–127), ALJ David K. Gatto issued his determination on March 8, 2018, finding Plaintiff not disabled (AR 18–43). On May 3, 2018, Plaintiff requested that the Appeals Council review the decision by the ALJ. AR 241. When the Appeals Council denied Plaintiff's request for review on December 12, 2018, the ALJ's decision became the final order of the Commissioner. AR 1–6. This civil action followed.

---

[1] Andrew Saul is the current Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). *See also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

## II. STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on correct legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation and quotation marks omitted). In reviewing the Commissioner's alleged errors, the Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986) (internal citations omitted).

"When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion." *Batson*, 359 F.3d at 1198, *citing Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). A reviewing court, however, "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (internal citation omitted). Finally, the court may not reverse an ALJ's decision on account of an error that is harmless. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (internal citation omitted). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## III. DISCUSSION

**A.  <u>Establishing Disability Under The Act</u>**

To establish whether a claimant is disabled under the Act, there must be substantial evidence that:

> (a)  the claimant suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months; and
>
> (b)  the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999), *citing* 42 U.S.C. § 423(d)(2)(A). "If a claimant meets both requirements, he or she is disabled." *Id*.

The ALJ employs a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(a). Each step is potentially dispositive and "if a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098; 20 C.F.R. § 404.1520. The claimant carries the burden of proof at steps one through four, and the Commissioner carries the burden of proof at step five. *Tackett*, 180 F.3d at 1098.

The five steps are:

Step 1. Is the claimant presently working in a substantially gainful activity? If so, then the claimant is "not disabled" within the meaning of the Social Security Act and is not entitled to disability insurance benefits. If the claimant is not working in a substantially gainful activity, then the claimant's case cannot be resolved at step one and the evaluation proceeds to step two. *See* 20 C.F.R. § 404.1520(b).

Step 2. Is the claimant's impairment severe? If not, then the claimant is "not disabled" and is not entitled to disability insurance benefits. If the claimant's impairment is severe, then the claimant's case cannot be resolved at step two and the evaluation proceeds to step three. *See* 20 C.F.R. § 404.1520(c).

Step 3. Does the impairment "meet or equal" one of a list of specific impairments described in the regulations? If so, the claimant is "disabled" and therefore entitled to disability insurance benefits. If the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. *See* 20 C.F.R. § 404.1520(d).

Step 4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is "not disabled" and is not entitled to disability insurance benefits. If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and the evaluation proceeds to the fifth and final step. *See* 20 C.F.R. § 404.1520(e).

Step 5. Is the claimant able to do any other work? If not, then the claimant is "disabled" and therefore entitled to disability insurance benefits. *See* 20 C.F.R. § 404.1520(f)(1). If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do. There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can do: (1) by the testimony of a vocational expert [("VE")], or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2. If the Commissioner meets this burden, the claimant is "not

disabled" and therefore not entitled to disability insurance benefits. *See* 20 C.F.R. §§ 404.1520(f), 404.1562. If the Commissioner cannot meet this burden, then the claimant is "disabled" and therefore entitled to disability benefits. *See id*.

*Id*. at 1098–99 (internal alterations omitted).

**B.     Summary of ALJ's Findings**

In preparation for step one, the ALJ noted that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2019. AR 23. At step one, the ALJ determined that Plaintiff did not engage in substantial gainful activity since November 15, 2014, the alleged onset date of disability. *Id*. At step two, the ALJ found that Plaintiff suffered from medically determinable severe impairments consisting of:

> asthma, degenerative joint disease of the bilateral knees (greater on the right); status post right knee arthroplasty; cervical and lumbar degenerative disc disease, lumbar intervertebral disc degeneration, thoracic and lumbar strain status post motor vehicle accident; chronic pain syndrome; adjustment disorder with mixed features/major depressive disorder/bipolar disorder; active alcohol abuse/dependence; and, post-traumatic stress disorder (PTSD).[2]

*Id*. At step three, the ALJ found that Plaintiff's impairment or combination of impairments did not meet or medically equal the severity of any "listed" impairment in 20 C.F.R., Part 404, Subpart ("Subpt.") P, Appendix ("App.") 1.[3] *Id*.

---

[2]     Although immaterial to the Court's ruling today, the ALJ appropriately considered obesity as a secondary factor under Social Security Ruling ("SSR") 02-1p, 2002 WL 34686281 (eff. from Sept. 12, 2002 to May 19, 2019). AR 23. In addition, the ALJ properly recognized that:

> the alleged remote history of illicit drug use (heroin and cocaine), and hypertension are "non-severe," because the record does not document any significant limitations associated with them. The claimant's blood pressure is adequately controlled with medication. There is no record of target organ damage or congestive heart failure. The claimant also complained of pain at hearing, but pain, *per se*, is not a medically determinable impairment. Even so, [the ALJ] considered [pain] in arriving at [his] "sedentary" findings in the instant matter.

*Id*.

[3]     The ALJ found, *inter alia*, that Plaintiff's "impairments, even when combined, do not meet or equal the criteria of an impairment listed in Appendix 1, Subpart P, Regulations No. 4"; "[h]er asthma condition does not meet or equal Listing 3.00, *et seq*."; and, "[t]he severity of [Plaintiff's] mental impairments, considered singularly and in combination, do not meet or medically equal the criteria of listing 12.15." AR 24.

4

In preparation for step four, the ALJ found Plaintiff had the residual functional capacity ("RFC")[4] to:

> [P]erform a modified form of "sedentary" work as defined in 20 CFR 404.1567(a) and 416.967(a). She is able to lift and carry no more than ten pounds, frequently, and twenty pounds, occasionally. She is able to sit for six hours, cumulatively, in an eight-hour workday. She is able to stand and/or walk for two hours, cumulatively, in an eight-hour workday, with the use of a cane for long distances and uneven terrain. She is able to occasionally stoop, balance, kneel and climb stairs or ramps. She is unable to climb ladders, ropes or scaffolds. She is unable to crouch, crawl or work around hazards, such as heights or dangerous moving machinery. She is able to tolerate occasional exposure to dusts, fumes, gases, poor ventilation and temperature extremes. She is able to understand, remember and carry out simple instructions using simple judgment to make simple, work-related decisions in a work setting with no more than occasional changes in routine, to perform one-to-two step work tasks.

AR 25. At step four, the ALJ determined that:

> The claimant is unable to perform her past relevant work as a production assembler (DOT job # 706.687-010, unskilled, svp 2, "light"), material handler (DOT job # 929.687-030, semiskilled, svp 3, "heavy"), press operator (DOT job # 617.260-010, skilled, svp 7, "heavy," combined with hand packer duties, DOT job # 920.587-018, unskilled, svp 2, "medium"), customer service clerk (DOT job # 299.367-010, semiskilled, svp 4, "light") or department supervisor (DOT job # 299.137-010, skilled, svp 7, "light"), because those jobs exceed her current residual functional capacity, according to the interrogatory responses of the vocational expert.

AR 41. The ALJ classified Plaintiff as "a younger individual age[d] 18-44, on the alleged disability onset date," who "subsequently changed age category to a younger individual age[d] 45-49;" categorized Plaintiff as possessing "a high school equivalency (GED) education" and as "able to communicate in English"; and, treated the transferability of job skills as immaterial to the disability determination. *Id*.

At step five, the ALJ found there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including the following representative occupations:

1. an order clerk, DOT job # 209.567-014, "sedentary," unskilled, with a specific vocational preparation (svp) of two, with about 45,000 jobs available in the national economy;
2. a document preparer, DOT job # 249.587-018, "sedentary," unskilled, with an svp of two, with about 99,000 jobs available in the national economy; and,

---

[4] "Residual functional capacity" is defined as "the most you can still do despite your limitations." 20 C.F.R. § 416.945(a)(1).

5

       3.      a jewelry preparer, DOT job # 700.687-062, "sedentary," unskilled, with an svp of two, with about 38,000 jobs available in the national economy.

AR 41–42. The ALJ confirmed that the vocational expert's testimony was consistent with the information found in the DOT and its companion publication, Selected Characteristics of Occupations. AR 42.

The ALJ concluded that, "[t]he claimant has not been under a disability, as defined in the Social Security Act, from November 15, 2014, through the date of this decision." *Id*. Accordingly, the ALJ denied Plaintiff's applications for DIB and SSI because Plaintiff was not disabled under sections 216(i), 223(d), and 1614(a)(3)(A), respectively, of the Social Security Act, from November 15, 2014 through the date of the decision. AR 43.

**C.**     <u>**Plaintiff's Symptom Testimony**</u>

On examination by her counsel at the administrative hearing, Plaintiff testified that she "see[s] a therapist once a week[,] . . . a psychiatrist once a month[, a]nd . . . take[s] medication" exactly as prescribed. AR 115. With respect to her mental health, Plaintiff has been diagnosed with "PTSD, which consists of depression, and anxiety." *Id*. When Plaintiff is depressed (about three times per week), she "isolate[s her]self[,] [has] a hard time going out, . . . doing chores, . . . bathing . . . [and,] get[ting] out of the bed." AR 116; *see also* AR 117. Plaintiff also experiences a loss of interest in activities around her home and feels hopeless. AR 116. Plaintiff has crying spells "[e]very other day, if not daily," which are triggered by "[f]lashbacks . . . that someone is trying to hurt [her]." *Id*. Plaintiff experiences five to ten-minute-long flashbacks in which she relives a traumatic incident "maybe five times a week." AR 118. Plaintiff prefers to be left alone during her depressive episodes. AR 116. Plaintiff has had thoughts of hurting herself in the past, with the last time being a month ago. AR 117. "Being around people" and "not [being] focused on doing anything" gives Plaintiff anxiety. *Id*. Plaintiff experiences anxiety attacks "[m]aybe three to four times a week." *Id*. When Plaintiff has an anxiety attack, she "take[s] medication[,] . . . listen[s] to a DVD that was given to [her], . . . [a]nd, . . . practice[s her] breathing techniques." *Id*. It takes "[a]t least 15 minutes" to calm Plaintiff down after she experiences an anxiety attack. AR 117–18. "The anxiety . . . [makes Plaintiff] feel like everything is moving so fast that [she does not] want to be out[side]. . . . But,

6

[Plaintiff] go[es] out because [she has] two dogs that [she has] to walk a few times a day. . . . [U]sually [Plaintiff] just walk[s] down a few streets where it's not crowded[.]" AR 119. Plaintiff will walk one dog for about fifteen minutes, take a five-minute break, then walk her other dog. AR 122. Plaintiff's inability to focus causes her to begin household chores but not complete them. AR 119. Plaintiff will "start [the chore], and then . . . either get physically tired, or sometimes . . . feel overwhelmed with doing things. And, [she has] to take a break. So, [Plaintiff] give[s] her]self time to breathe, and go[es] through the techniques that [she has] been taught before." *Id*. Plaintiff is able to concentrate on a chore for about "an hour" before taking a mental or physical break. AR 120, 122. Plaintiff experiences nightmares "[a] couple of times a week." AR 118. After having a nightmare, Plaintiff "sit[s] up sometimes" until she falls back asleep and takes sleeping pills when she cannot sleep. *Id*. Plaintiff also experiences problems with her memory; she will "read something and forget what [she] read. And, [she] will read it over[] and over again, but [she] will forget." AR 120.

With respect to physical health, Plaintiff experiences problems with her right knee following a surgery in 2016. *Id*. Plaintiff claims her knee still feels "numb, and it feels like something is moving around in there. And, [she] went to the doctor to do a follow-up, and they [sic] said the replacement went well, but they [sic] recommended that [Plaintiff receive] electromagnetic stimulation." *Id*. Plaintiff's pain returned "[i]mmediately" after surgery. AR 121. Plaintiff "feel[s constant] stabbing pain, stiffness, [and] crunching" in her right knee. *Id*. Her knee pain increases if she "sit[s] too long, . . . stand[s for] long periods of time, [or if she] walk[s]." *Id*. Plaintiff can "straighten [her right knee], but not to the full extension. And, the same with bending. [She] can't squat too far down[.]" *Id*. Notwithstanding the above testimony, Plaintiff does not use any assistive tools to help her walk. *Id*.

During a typical day, Plaintiff will:

> get up, walk [her] dogs, and . . . lie back down sometimes for maybe five hours or so. [Plaintiff will then] get up and walk [her dogs] again, and [then she] may watch television, or try to do something productive like cleaning[.] . . . [Plaintiff will then] talk[] with [her] sister and brother-in-law[]s[,] . . . [watch] TV, and [go to] bed.

AR 121–22.

7

**D.     Vocational Expert ("VE") Testimony**

VE Valerie Williams testified that Plaintiff previously worked as an:

> Assembler[,] production, DOT 706.687-010, SVP two, strength is light. Material handler, DOT 929.687-030, SVP three, strength is heavy. [Plaintiff had one previous composite job, consisting of p]ress operator, DOT 617.260-010, SVP seven, strength is heavy[] . . . combined with the hand packer [occupation], DOT 920.587-018, SVP two, strength is medium. Customer service clerk, DOT 299.367-010, SVP four, strength is light, as performed, medium.[5]

AR 123. After confirming that Plaintiff had the ability to hire but not fire as a supervisor, the VE testified that Plaintiff previously worked as a "department supervisor, DOT 299.137-010, SVP seven, strength is light as performed, SVP five, strength light." AR 123–24.

The ALJ asked the VE to consider:

> a hypothetical woman who is a younger individual with at least a high school education, and the same work history as the claimant, with a combination of impairments that would limit her to sedentary work as defined by the Social Security regulations, with occasional climbing of stairs and ramps. No climbing of ladders, ropes, or scaffolds. Occasional balancing, occasionally stooping, occasionally kneeling. No crouching, or crawling. No exposure to hazards such as heights, or dangerous moving machinery. With a further limitation to understanding, remembering, and carrying out . . . simple instructions using simple judg[]ment, making simple work-related decisions in the work setting, with no more than occasional changes in routine to perform one to two-step work tasks. With all those limitations, would that hypothetical woman be able to do any of Ms. Baylor's past work?

AR 124. The VE replied that the hypothetical individual would not be able to perform any of Plaintiff's past work. AR 125. However, the VE testified that the hypothetical individual would be able to perform other unskilled work available in the state of Nevada and/or the national economy, including:

> jewelry preparer, DOT 700.687-062, SVP two, strength is sedentary national numbers 38,000, Nevada numbers, 175. Order clerk, DOT 209.567-014, SVP two, strength is sedentary, national numbers, 45,000, Nevada numbers, 159. Call out operator, DOT 237.367-014, SVP two, strength is sedentary, national numbers, 25,000, Nevada numbers, 225.

*Id.* The ALJ asked the VE whether her answer would be the same if the hypothetical individual was limited to "simple work" instead of "one to two-step" work. *Id.* The VE responded that she only had "one SVP one job fitting that hypothetical." *Id.* The VE later amended her answer to include

---

[5] "[C]omposite jobs have significant elements of two or more occupations and, as such, have no counterpart in the DOT. Such situations will be evaluated according to the particular facts of each individual case." SSR 82-61, 1982 WL 31387 (eff. Aug. 20, 1980).

8

1  the "same [three] jobs that [she] gave" initially, after the ALJ noted that a "simple work [limitation]
2  would be more exp[a]nsive than just one to two-step" limitation. AR 126. The VE confirmed that
3  her testimony was consistent with the DOT and its companion publication, the Selected
4  Characteristics of Occupations. *Id*.

On examination by Plaintiff's counsel, the VE testified that the hypothetical individual would
be unable to sustain competitive employment if she missed four or more days of work per month on
a consistent basis. *Id*.

**E.     Issue Presented**

Plaintiff's only challenge to the adverse disability determination alleges that the ALJ erred when failing to resolve the conflicts between her RFC limitation, restricting her to simple one to two-step tasks, and the reasoning level requirements of the occupations the VE opined she could perform. ECF No. 16 at 7:6–8:6. Plaintiff points out that the jewelry preparer position is a Level Two occupation, and the order clerk and document preparer positions are Level Three occupations.[6] DOT 700.687-062, 209.567-014, 249.587-018, respectively. Plaintiff contends "[t]he ability to perform even reasoning level 2 occupations is at odds with a [RFC] limitation to one-to-two step tasks," which is consistent with the reasoning requirements of a Level One occupation.[7] ECF No. 16 at 7:7–9, *citing Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1003–04 (9th Cir. 2015). Plaintiff argues that neither the VE nor the ALJ identified this issue and that the ALJ failed to resolve this conflict in accordance with the directives outlined in SSR 00-4p. *Id*. at 7:17, 7:20–22, 7:25–26, 8:4–6. Defendant argues that "[u]sing a harmless error analysis, th[e] … Court may conclude that Claimant could perform jobs with a reasoning level of 3 notwithstanding the ALJ's limitation to work with simple instructions and one-two-step tasks." ECF No. 19 at 5:19–21.

---

[6] A Level Two occupation requires a claimant to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." DOT, App. C, 1991 WL 688702. A Level Three occupation requires a claimant to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." *Id*.

[7] A Level One occupation requires a claimant to "[a]pply commonsense understanding to carry out *simple one- or two-step instructions*. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job." *Id*. (emphasis added).

In *Zavalin v. Colvin*, 778 F.3d 842 (9th Cir. 2015), the Ninth Circuit explained the ALJ's obligation at step five of the sequential evaluation process. First, an ALJ must "assess[] a claimant's residual functional capacity, defined as the most that a claimant can do despite physical and mental limitations caused by his impairments and related symptoms. 20 C.F.R. § 416.945(a)(1)." *Id*. at 845 (internal quotation marks omitted). Next, the ALJ must consider "potential occupations that the claimant may be able to perform. *See* 20 C.F.R. § 416.966." *Id*. When "making this determination, the ALJ relies on the DOT, which is the SSA's primary source of reliable job information regarding jobs that exist in the national economy. . . . The DOT describes the requirements for each listed occupation, including the necessary General Educational Development ("GED") levels . . . ." *Id*. at 845–46 (internal citations and quotation marks omitted). Importantly, "[t]he GED levels include[] the reasoning ability required to perform the job, ranging from Level 1 (which requires the least reasoning ability) to Level 6 (which requires the most)." *Id*. (citation omitted). The ALJ will also rely "on the testimony of vocational experts who testify about specific occupations that a claimant can perform in light of his residual functional capacity. 20 C.F.R. § 416.933(e)[.]" *Id*. (internal citation omitted). And, "to conclude the Step Five analysis, the ALJ determines whether, given the claimant's [RFC], age, education, and work experience, he actually can find some work in the national economy." *Id*. (internal citations and quotation marks omitted).

If there is "an apparent conflict between the vocational expert's testimony and the DOT—for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle—the ALJ is required to reconcile the inconsistency." *Id*. (internal citation omitted). In a case of conflict, such as exists here, "[t]he ALJ must ask the expert to explain the conflict and . . . determine whether the vocational expert's explanation for the conflict is reasonable before relying on the expert's testimony to reach a disability determination" pursuant to SSR 00-4p. *Id*. at 846 (internal citations and quotation marks omitted). Even if the ALJ commits an error at step five, however, the Court must affirm the disability determination if the error is harmless. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

The ALJ's failure to reconcile the VE's testimony with Plaintiff's RFC limitation restricting her to one to two-step tasks was harmless, although not for the reason stated by the Commissioner.

Specifically, Defendant argues that "while two of the three occupations involved reasoning three levels, the other job was reasoning two, and any error in resolving a purported conflict is harmless." ECF No. 19 at 8:11–12, *citing Hernandez v. Berryhill*, 707 F. App'x. 456, 458–59 (9th Cir. 2017) (unpublished).

In *Hernandez*, the court explained that there is no apparent conflict between an RFC determination limiting a claimant to "simple, repetitive tasks" and Level Two occupations. *Id*. at 458; *see also Lara v. Astrue*, 305 F. App'x. 324, 326 (9th Cir. 2008) (unpublished) ("[S]omeone able to perform simple, repetitive tasks is capable of . . . Reasoning Level 2 jobs."); *Abrew v. Astrue*, 303 F. App'x. 567, 569 (9th Cir. 2008) (unpublished) ("[T]here was no conflict between the ALJ's step five determination that [the claimant] could complete only simple tasks and the vocational expert's testimony that [the claimant] could do jobs that [the DOT] categorizes at 'Reasoning Level 2.'"); *Coleman v. Astrue*, No. CV 10-5641 JC, 2011 WL 781930, at *5 (C.D. Cal. Feb. 28, 2011) ("[T]he weight of prevailing authority precludes a finding of any inconsistency between a reasoning level of two and a mere limitation to simple, repetitive tasks or unskilled work.") (collecting cases); *Harrington v. Astrue,* No. 07cv1330 JM (RBB), 2009 WL 102689, at *2 (S.D. Cal. Jan. 14, 2009) (simple, repetitive work is consistent with the definition of GED reasoning level two). The court went on to explain that "even if the ALJ erred by failing to resolve an apparent conflict between Hernandez's RFC and the vocational expert's testimony that Hernandez could perform two other jobs that require Level 3 reasoning, . . . any such error was harmless" because the vocational expert concurrently provided a Level Two occupation that the claimant could perform. 707 F. App'x at 458–59. However, *Hernandez* stated in a footnote that a "simple one or two-step job instructions" RFC limitation raises an apparent conflict with the reasoning level requirements of Level Two occupations. *Id*. at 458 n.3.

Here, the ALJ limited the hypothetical individual to "understanding, carrying out, and remembering simple instructions using simple jud[]gment, making simple work-related decisions in the work setting, with no more than occasional changes in routine to perform *one to two-step work tasks*." AR 124 (emphasis added). This description is inconsistent with the reasoning level requirements of Level Two occupations. *Hernandez*, 707 F. App'x at 458 n.3; *Rounds*, 807 F.3d at

11

1003. Therefore, the ALJ was required to resolve this conflict in accordance with SSR 00-4p before relying on the VE's testimony to reach a disability determination. *Zavalin*, 778 F.3d at 846. However, consistent with the case law and the record in this ccase, the ALJ's failure to address the apparent conflict between the VE's testimony and Plaintiff's RFC limitation was harmless because he cited additional reasons in the record, supported by substantial evidence, to find Plaintiff retained the reasoning levels to perform at least the Level Two occupation identified by the VE.

First, the ALJ afforded "great weight" to an examining medical consultant who opined that Plaintiff "is able to understand, remember and carry out detailed and simple instructions with sustained concentration, but . . . requires increased effort to do the same with an extensive variety of complex instructions." AR 37. In addition, the ALJ afforded "great weight" to the opinions provided by two Disability Determination Services consultants, each of whom stated that:

> the claimant's ability to care for her pets, her overall favorable response to conservative mental health treatment, the lack of any extended mental ward admission and the documented clinical signs warrant findings of mild limitation in interacting with others, moderate limitation in understanding, remembering or applying information, moderate limitation in concentration, persisting or maintaining pace and no limitation in adapting or managing oneself.

AR 39. None of the medical opinions on which the ALJ relied limited Plaintiff to one to two-step tasks.

Further, the ALJ noted that Plaintiff "previously performed skilled, semiskilled and unskilled jobs[.] . . . She hired people in her past work as a department supervisor, per testimony. . . . She exercised adequate reasoning and judgment to make work-related decisions at past jobs." AR 39; *see also* 20 C.F.R. § 404.1529(c)(3) (The Social Security Administration "will consider . . . information about [a claimant's] prior work record"). Next, the ALJ personally observed Plaintiff "answer[ing] questions and provided explanations at hearing, indicative of sufficient ability to comprehend questions and provide pertinent responses." AR 37; *see also* 20 C.F.R. § 404.1529(c)(3) (The Social Security Administration "will consider . . . observations by [its] employees and other persons."). Overall, the ALJ determined that Plaintiff's "educational history, . . . the collective

mental status exams of record[,] and her ability to sustain sufficient concentration to operate a motor vehicle[] suggest no more than moderate limitations in understanding, remembering or applying information and concentrating, persisting or maintaining pace." AR 37.

These findings support the ALJ's findings that Plaintiff retained the reasoning levels to perform at least the Level Two occupation identified by the VE, irrespective of the ALJ's one to two-step work task limitation. Moreover, Plaintiff did not challenge any of these findings and, therefore, has waived any argument she may have had concerning these issues. *Kim v Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) (the Court may not consider on appeal issues not "specifically and distinctly argued" in the party's opening brief).

## IV.  CONCLUSION

Addressing the only issue presented to the Court in Plaintiff's brief, Plaintiff is correct that the ALJ failed to reconcile the VE's testimony with Plaintiff's RFC limitation pursuant to the directives outlined in SSR 00-4p. However, this error was harmless. As explained above, the ALJ relied on additional facts from the record, supported by substantial evidence, when concluding that Plaintiff retained the reasoning levels required to perform at least the Level Two occupation identified by the VE. Plaintiff did not address the additional facts relied on by the ALJ and, therefore, waived any argument she might have had regarding the factual findings on which the ALJ properly based his determination.

## V.  ORDER

IT IS HEREBY ORDERED that Plaintiff's Motion for Reversal and/or Remand (ECF No. 16) is DENIED, and that Defendant's Cross-Motion to Affirm and Response to Plaintiff's Motion for Summary Judgment and/or Remand (ECF No. 19) is GRANTED.

DATED this 13th day of May, 2020.

_____
ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE